**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Ikenna Momah

    v.                                                    Case No. 1:23-cv-422-AJ

Northeast Men's Health
Management, LLC

**ORDER**

Before the court are plaintiff Ikenna Momah's motions to compel (Doc. No. 22), to establish a briefing schedule (Doc. No. 24), to extend the close of discovery (Doc. No. 25), and for leave to conduct additional fact depositions (Doc. No. 26).

Defendant Northeast Men's Health Management, LLC ("Northeast") objects (Doc. Nos. 27, 29, 30, 31), arguing that Momah's motions are untimely.  Northeast further argues that Momah's discovery requests, which are the subject of his motion to compel, are disproportional to the needs of the case, unduly burdensome, and/or moot.  For reasons explained below, Momah's motions are denied.

**BACKGROUND**

**I.   Factual Background[1]**

Plaintiff Ikenna Momah worked as a patient coordinator for Northeast.  He claims that during his employment, a coworker,

---

[1] The court draws the following facts from Momah's complaint (Doc. No. 1).

Stefanie Durand, engaged in racially discriminatory conduct towards him.  Momah reported this conduct to his regional manager, Jared Diffily, but Diffily purportedly ignored Momah's complaints and failed to initiate an investigation.

Durand's conduct allegedly continued and escalated in October and November 2022.  According to Momah, on November 8, 2022, Durand engaged in hostile and threatening behavior toward him, that prompted him to leave work.  On November 9, 2022, Momah emailed Diffily and Vice President of Human Resources, Jared Ritter, relaying Durand's conduct and asking for help.  Momah then met with Northeast representatives on November 23, 2022 and reiterated concerns about his personal safety.  On December 6, 2022, however, Northeast terminated Momah's employment, citing "multiple patient complaints over the last four-week period."  Compl. (Doc. No. 1) ¶ 148.

Momah contends that prior to November 1, 2022, Northeast had not received any written patient complaints about him and none of his performance reviews referenced any patient complaints.  In fact, according to Momah, none of the patient complaints existed prior to Momah reporting concerns of racial discrimination.  Although Momah was a top performer for Northeast, and at certain times, the highest earning patient coordinator for Northeast, Northeast never provided him with an opportunity to respond to the alleged complaints.

2

On September 7, 2023, Momah filed suit against Northeast alleging claims of race discrimination (Count I), hostile work environment (Count II), retaliation (Count III), and wrongful termination (Count IV).

## II.  Procedural History

Under the court's original scheduling order, the completion of discovery deadline was July 12, 2024.  Scheduling Order (Doc. No. 11) (approving with certain changes the parties' Proposed Discovery Plan (Doc. No. 9)).  On May 13, 2024, the parties represented that: certain depositions were scheduled to occur during the week of June 24, 2024; they were in the process of scheduling plaintiff's deposition; and following depositions the parties could require additional depositions or further paper discovery.  Joint Statement Regarding Status of Discovery (Doc. No. 15).  Thereafter, the court granted the parties' request to modify certain scheduling order deadlines (Doc. No. 17), including extending the completion of discovery deadline to April 1, 2025 and the motion for summary judgment deadline to May 1, 2025.  See Order, Dec. 9, 2024.

On March 4, 2025, at the request of the parties, the court held an informal discovery conference.  During that conference, the parties agreed to certain next steps in an effort to resolve their discovery disputes.  The parties further agreed to stay case deadlines until a case management conference with the court

3

on May 15, 2025.  During the May 15, 2025 conference, the parties agreed to reinstate case deadlines, and the court issued a modified scheduling order consistent with that agreement. Scheduling Order (Doc. No. 19).  Under the modified scheduling order, the completion of discovery deadline passed on July 1, 2025, and motions for summary judgment are due August 1, 2025.

On July 18, 2025 and July 21, 2025, Momah filed several motions, seeking to compel additional discovery responses from Northeast, set a briefing schedule, extend the completion of discovery deadline, and permit Momah to conduct additional fact witness depositions.  The court addresses each motion in turn.

## DISCUSSION

### I.   Motion to Compel (Doc. No. 22)

On July 18, 2025, Momah filed a motion to compel responses to discovery requests concerning: (1) the identity of Northeast patients who purportedly complained about Momah; (2) comparator evidence regarding patient complaints about other employees; (3) names of entities that employed Jon Kraus and Ritter; (4) native versions of documents; and (5) medical records containing Durand's post-traumatic stress disorder ("PTSD") diagnosis. Because Momah filed his motion to compel after the close of discovery, the court first addresses the issue of timeliness before turning to the substance of his motion.

4

**A.    Timeliness**

The completion of discovery deadline passed on July 1, 2025, and Momah filed his motion to compel on July 18, 2025.

"A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes." Faigin v. Kelly, 184 F.3d 67, 84 (1st Cir. 1999).  Under this case-management authority, courts have routinely denied as untimely motions to compel filed after the close of discovery.  Burgos-Martinez v. City of Worcester, 345 F. Supp. 3d 105, 106-07 (D. Mass. 2018) (collecting cases); see also Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 45-46 (1st Cir. 2002) ("[A] litigant who ignores case-management deadlines does so at his peril."); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (finding no abuse of discretion by the district court in denying the plaintiff's motion to compel document production filed more than a month after the close of discovery deadline); SHS ACK, LLC v. Silberberg, No. 21-CV-12121-AK, 2023 WL 4186289, at *2 (D. Mass. June 26, 2023) ("Courts have routinely denied untimely motions to compel filed after the close of discovery in cases where the discovery was timely served."); Sellers v. U.S. Dep't of Def., No. CA 05-381 S, 2007 WL 9782872, at *10 (D.R.I. Nov. 9, 2007) (denying untimely motions to compel as they would

5

be prejudicial to defendants and "undermine" the court's "orderly processes").

In evaluating whether the delay is justified, courts have applied the "excusable neglect" standard.  See Burgos-Martinez, 345 F. Supp. 3d at 107; see also Fed. R. Civ. P. 6(b) (providing that the court may grant an extension of time "on motion made after the time has expired if the party failed to act because of excusable neglect.").  "[T]he excusable neglect inquiry involves a significant equitable component and must give due regard to the totality of the relevant circumstances surrounding the movant's lapse." Dimmitt v. Ockenfels, 407 F.3d 21, 24 (1st Cir. 2005) (quotation omitted).  In considering the totality of the circumstances, the most critical factor is "the asserted reason for the mistake." Id.  Inattention that results in a failure to abide by unambiguous court deadlines normally does not constitute excusable neglect.  See id.

Here, Momah offers no justification for the untimeliness of his motion to compel.  While he alludes to the fact that the deposition transcript of Kraus became available on July 3, 2025, Momah offers no explanation as to how the delay in receiving the deposition transcript prevented him from seeking to extend the completion of discovery deadline before it passed.  Moreover, Momah identifies no new information gleaned from the deposition that triggered his motion to compel.  Indeed, as discussed

below, Momah was on notice as to these discovery issues in advance of both the Kraus deposition on June 24, 2025 and the completion of discovery deadline.  For example, Northeast's answers to Momah's interrogatories are dated February 29, 2024; its supplemental answers are dated May 29, 2024; its responses to Momah's second set of requests for production of documents are dated May 31, 2024; and its responses to Momah's third set of requests for production of documents are dated August 16, 2024.  Where Momah offers no justification for the significant delay in raising the issues that are the subject of his motion to compel, he has not met the excusable neglect standard. Accordingly, his motion to compel is denied as untimely. Nevertheless, for completeness, the court turns to the substance of his motion.

**B.    Applicable Legal Standard**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  In weighing proportionality, the court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit."

Id.

Further, the court must limit the frequency or extent of discovery otherwise permitted if it determines that:

(i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii)   the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

A party seeking discovery may move for an order compelling discovery after first attempting in good faith to resolve the dispute without court action. Fed. R. Civ. P. 37(a). "The moving party bears the initial burden of showing that it seeks relevant information, and if satisfied, the opposing party then bears the burden of showing that the discovery request is improper." Aghamehdi v. OSRAM Sylvania, Inc., No. 17-cv-700-JD, 2019 WL 919487, at *1 (D.N.H. Feb. 25, 2019)

## C.    Patient Names

In producing documents responsive to Momah's discovery requests concerning patient complaints, Northeast redacted confidential information of patients, including their names. Momah now seeks the names of Northeast patients who purportedly

8

complained about him.  He argues that he is entitled to such information because Northeast is not an entity covered by HIPAA and such information is necessary to challenge the veracity of the complaints.  In response, Northeast asserts that disclosing the identity of the patients would unnecessarily reveal confidential, medical information because it already provided Momah redacted copies of their medical records.  Northeast further argues that Momah failed to obtain the information he seeks through less burdensome means and less intrusive sources, such as through depositions of the employees who spoke with the complaining patients.

Regarding relevancy, Northeast cites the patient complaints as its legitimate, non-discriminatory reason for terminating Momah's employment.  To prevail on his claims of discrimination and retaliation, Momah must show that the "proffered reason is pretextual and that the actual reason for the adverse employment action is discriminatory." Theidon v. Harvard Univ., 948 F.3d 477, 496 (1st Cir. 2020).  Pretext can be shown by "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Id. at 497.  Thus, the identity of the patients for purposes of

9

verifying their alleged complaints is relevant to the credibility of Northeast's proffered reason for terminating Momah's employment and the issue of pretext.

In evaluating whether to disclose a patient's identity and/or medical records in employment disputes, however, "courts must balance the right of a patient to privacy in his or her medical records against a party's need for discovery." Pinder v. Express Care of Belleview, LLC, No. 5:13-cv-296-Oc-22PRL, 2013 WL 6069270, at *1 (M.D. Fla. Nov. 15, 2013) (citing United States v. Polan, 970 F.2d 1280, 1285 (3d Cir. 1992) ("[I]ndividual's privacy interest in medical records must be balanced against the legitimate need of others in obtaining disclosure.")); see also Marshall v. Galvanoni, No. 2:17-cv-00820-KJM-CKD, 2019 WL 2491524, at *2 (E.D. Cal. June 14, 2019) ("To evaluate whether privacy interests should prevail over the interest in fully discovering a case, the court must balance the party's need for the information against the individual's privacy rights.").

In Pinder, the court held that the plaintiff failed to show a compelling need for the patient's medical chart when the plaintiff already obtained numerous records related to the patient complaint at issue. Pinder, 2013 WL 6069270, at *2. The court further reasoned that "[p]laintiff's attempt to

establish pretext could be accomplished in other less personally invasive means . . . ." Id.

As with the plaintiff in Pinder, Momah's need for the identity of the patient names does not outweigh the patients' privacy interests, particularly where Momah has access to their medical records.  In addition, Momah could have employed less invasive means to gather information regarding the credibility of the complaints, such as through depositions of Northeast employees who documented the complaints.  In sum, despite the relevance of patient identities, privacy considerations and the ability to challenge the veracity of the complaints through other means, preclude the discoverability of this information. Accordingly, Momah's motion to compel is also denied on this basis.

### D.   Comparator Evidence

Momah seeks the production of spreadsheets containing patient complaints for other patient coordinators and all patient complaints pertaining to patient coordinators other than Momah.  Momah subsequently narrowed these requests to particular time periods, patient coordinators, and complaint subject matter.  As to some of the requests, Northeast stated that it had no responsive documents in its possession, custody, or control.  Regarding other requests, Northeast stated that it

does not track patient complaints and generating that information would be unduly burdensome.

"Comparator discovery is relevant and proportional if it is limited to . . . the same form of discrimination claimed by the plaintiff and to the same department or decisionmaker who may have contributed to the employment decisions that are the subject of the plaintiff's complaint." E.E.O.C. v. Otis Worldwide Corp., No. 23-10612-MJJ, 2025 WL 1234152, at *6 (D. Mass. Apr. 29, 2025). Comparator discovery "is not boundless" and should be limited "given that it involves the private information of non-party employees." Id.

As to Momah's request nos. 55 and 56 for spreadsheets, files and/or folders of patient complaints concerning patient coordinators other than Momah, Northeast stated it has no responsive documents in its possession custody or control. In other words, the documents that Momah seeks do not exist. "[A] party cannot produce what it does not have, and so, clearly, the court cannot compel a party to produce non-existent documents." Baker v. Walters, 652 F. Supp. 3d 768, 786 (N.D. Tex. 2023) (cleaned up); Thompson v. Lantz, No. 3:04cv2084 (AWT), 2009 WL 3157561, at *1 (D. Conn. Sept. 25, 2009) ("[A] party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence.") (cleaned up);

12

see also, Greenberg v. PATHS Program Holding, LLC, No. 3:19-cv-30032-MGM, 2023 WL 3868318, at *3 (D. Mass. June 7, 2023) ("[I]t is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials.") (cleaned up).

Regarding other modified requests for patient complaints, such as request nos. 72, 126, and 127, Northeast stated that the requests were unduly burdensome because Northeast neither tracks nor compiles patient complaints.  Based on Northeast's representations, including that it would be required to review hundreds of thousands of patient records to identify complaints, the court finds that the burden and expense associated with the production outweigh the likely benefit of the information.  Accordingly, Momah's motion to compel is also denied on this basis.

### E.   Miscellaneous Requests

Momah requested the name of Kraus's and Ritter's employer because at Kraus's deposition, he could not recall which entity owned or controlled Northeast.  Based on Northeast's representations in its objection, Northeast provided the name of the employer to Momah.  Accordingly, Momah's motion is denied as moot regarding this request.

Momah also seeks the native versions of certain spreadsheets and exhibits.  As to the native version of documents created in "Google Docs," Northeast represents that it

13

cannot produce it in native format due to platform limitations. Northeast has, however, produced all versions of spreadsheets in Excel format.  Accordingly, where Northeast has produced all responsive documents in its possession, custody, or control, Momah's motion is also denied as to these requests.

Regarding Durand's PTSD diagnosis, Northeast's counsel confirmed the diagnosis after reviewing Durand's medical records.  The court agrees with Northeast that the underlying medical records are irrelevant in light of counsel's representation.  Thus, this request is denied.

**II.  Motion to Establish Briefing Schedule (Doc. No. 24), Motion to Extend Close of Discovery (Doc. No. 25), and Motion for Leave to Conduct Additional Fact Depositions (Doc. No. 26)**

Momah's motions to establish a briefing schedule, to extend the close of discovery deadline, and for leave to conduct additional fact depositions all seek to modify the court's scheduling order.

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  "Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment." O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 155 (1st Cir. 2004) (quotation omitted).  While the court may consider prejudice to the opposing party, "indifference by the moving party" precludes modification, irrespective of prejudice, "because such conduct

14

is incompatible with the showing of diligence necessary to establish good cause." Id.

In O'Connell, the court applied the "good cause" standard to plaintiffs' request to amend their complaint after their scheduling order deadline for amendment of pleadings had passed. See id. Other courts, however, have noted that the "excusable neglect" standard, set forth in Rule 6(b), applies when motions are filed after the applicable scheduling order deadline. See Fortin v. Town of Wells, No. 09-179-P-S, 2009 WL 3327200, at *3 n.2 (D. Me. Oct. 13, 2009) (applying the excusable neglect standard to a request to extend expert disclosure deadlines set forth in the scheduling order); see also U.S. Bank Nat. Assoc. v. James, No. 09-84-P-JHR, 2010 WL 1416126, at *1 (D. Me. Apr. 5, 2010) ("A motion for leave to amend filed after the deadline for such motions set by a scheduling order must establish good cause or excusable neglect."). As noted above, "the excusable neglect inquiry involves a significant equitable component and must give due regard to the totality of the relevant circumstances surrounding the movant's lapse." Dimmitt, 407 F.3d at 24 (quotation omitted).

Here, Momah has not satisfied his burden under either the Rule 16(b) good cause standard or the Rule 6(b) excusable neglect standard. Specifically, Momah suggests that the receipt of the Kraus deposition transcript on July 3, 2025 justifies his

15

noncompliance with the completion of discovery deadline.  Momah, however, identifies no newly discovered information during the deposition to warrant modification of the court's scheduling order, and he offers no other explanation for his delay in filing these motions.  Accordingly, where Momah has not met his burden under either the good cause or the excusable neglect standard, his motions to set a briefing schedule, to extend the close of discovery deadline, and for leave to conduct additional depositions are denied.

### CONCLUSION

For the reasons set forth above, Momah's motion to compel (Doc. No. 22), motion to establish a briefing schedule (Doc. No. 24), motion to extend the close of discovery (Doc. No. 25), and motion for leave to conduct additional fact depositions (Doc. No. 26) are denied.

SO ORDERED.

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

July 29, 2025

cc:  Counsel of Record